```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

OTIS W.,

           Plaintiff,

      v.                                       **DECISION AND ORDER**

                                                                     23-CV-761S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

      1.      Plaintiff Otis W.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed his application with the Social Security Administration on February 7, 2017.  He alleged disability beginning on September 23, 2015, due to status post gunshot wounds, cervical spine disorder, lumbar spine disorder, headaches, neuropathy of left upper extremity, right parieto-occipital encephalomalacia, subarachnoid hemorrhage, left shoulder disorder, depressive disorder, post-traumatic stress disorder ("PTSD"), hypertension, hyperlipidemia, insomnia, and substance abuse disorder.  His application was denied and he thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3. On May 30, 2019, ALJ John Loughlin held a video hearing at which Plaintiff represented by counsel and a Vocational Expert appeared and testified. (R.² at 15, 30-56.) At the time of the hearing, Plaintiff was 52-year-old man with a limited education. He had no past relevant work. (R. at 23; see also R. at 901.)

4. The ALJ considered the case *de novo* and, on June 27, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 15.) After the Appeals Council denied Plaintiff's request to review the ALJ's decision (R. at 1), he filed an action challenging the Commissioner's decision. This action resulted in a Decision and Order issued by Hon. Elizabeth A. Wolford on June 13, 2022, that remanded the case for further proceedings. Otis W. v. Comm'r, No. 1:20-CV-01241 EAW, 2022 WL 2114797 (W.D.N.Y. June 13, 2022) (R. at 953). Chief Judge Wolford concluded that the ALJ improperly relied upon his lay opinion in assessing Plaintiff's residual functional capacity. Id. at *3-4. (R. at 959-61.)

5. On July 3, 2022, the Appeals Council vacated the ALJ's 2019 decision and directed further administrative proceedings consistent with Chief Judge Wolford's Decision and Order. (R. at 950.)

6. ALJ Bonnie Hannan then conducted a teleconference due to the COVID-19 pandemic on February 21, 2023, at which Plaintiff again represented by counsel and Vocational Expert Abbe May appeared and testified. (R. at 888, 911-47.) On March 30, 2023, the ALJ issued her decision denying Plaintiff's claim for benefits. (R. at 888.)

---

² Citations to the underlying administrative record are designated as "R."

Plaintiff then filed this current action challenging the Commissioner's final decision.[3] (Docket No. 1.)

7. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 4, 9.) Plaintiff filed his reply on January 26, 2024 (Docket No. 10), stating that no formal reply was needed. This Court then took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

8. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

9. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen,

---

[3] The ALJ's March 30, 2023, decision became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

3

859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

10. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

11. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform

>  his past work. Finally, if the claimant is unable to perform his
>  past work, the [Commissioner] then determines whether there
>  is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

      12.     Although the claimant has the burden of proof at the first four steps, this burden shifts to the Commissioner at the fifth and final step. See Yuckert, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

      13.     The ALJ analyzed Plaintiff's claim for benefits under the five-step process set forth above. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (R. at 890; see R. at 17, 956.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: status post gunshot wounds, cervical spine disorder, lumbar spine disorder, headaches, neuropathy of left upper extremity, right parieto-occipital encephalomalacia, subarachnoid hemorrhage, left shoulder disorder, depressive disorder, and PTSD. (R. at 891.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 891-94.)

14.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with stated limitations.  Specifically, the ALJ found that Plaintiff could occasionally reach overhead to the left and climb ramps, stairs, ladders, ropes, or scaffolds.  Further, the ALJ opined that Plaintiff could frequently balance, stoop, kneel, crouch, crawl, and work in an environment with moderate noise.  The ALJ deemed Plaintiff able to perform simple, routine, and repetitive tasks, make simple work-related decisions, tolerate few changes in a routine work setting, and have occasional and superficial contact with supervisors, coworkers, and the public.  (R. at 894-95.)

15.     At Step Four, the ALJ found that Plaintiff had no past relevant work.  (R. at 901.)  At Step Five, the ALJ found that Plaintiff was not disabled prior to September 26, 2021, his 55th birthday, but became disabled on that date due to his advanced age.  This raises the issue of disability coverage from onset on September 23, 2015, through September 26, 2021.  The ALJ found that during that period Plaintiff could perform work but was impeded by additional limitations.  The ALJ posed hypotheticals to the Vocational Expert of a claimant similar to Plaintiff in age, education, work experience, and RFC.  The Vocational Expert opined that such a hypothetical claimant could perform such representative jobs as a prep cook, auto detailer, and janitorial worker.  (R. at 902.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (Id.)

16.     Plaintiff's present objections arise from the ALJ's assessment of the April 18, 2019, opinion of Malerie Staskiewicz, MHC-P ("MHC Staskiewicz"), from Best Self Behavioral Health ("Best Self").  (R. at 801.)

17.     MHC Staskiewicz treated Plaintiff and completed a Mental Residual Functional Capacity Questionnaire on April 18, 2019, summarizing his condition.  In that

report, MHC Staskiewicz opined that Plaintiff could not engage in full-time employment on a sustained basis and he would be absent from work more than four days per month due to PTSD, traumatic brain injury, and a history of psychiatric trauma.  (R. at 801, 805.)  She found that Plaintiff had an impaired ability to concentrate and poor recent and long-term memory.  (R. at 801.)  She further noted that Plaintiff attended mental health counseling on a biweekly basis.  (R. at 808.)

18.   The ALJ, however, gave this opinion little weight.  (R. at 899.)  The ALJ found that Plaintiff's prior examinations revealed normal mental health indicia, such as normal mood and affect, evidence of recent and remote memory, appropriate behavior, and being alert, awake, and possessing a grossly intact attention and concentration.  (R. at 899; see R. at 214, 302-03, 436-37, 1048-49.)  The ALJ determined that this record is inconsistent with the opinion of MHC Staskiewicz that Plaintiff was unable to engage in full-time work or would suffer from frequent absenteeism.  The ALJ furthermore relied upon these examination results to find that Plaintiff could perform at the stated RFC.  (R. at 899-900.)

19.   Plaintiff now argues that the RFC determination is not supported by substantial evidence because the ALJ erred in weighing this opinion.  Absent this opinion, Plaintiff submits that the ALJ lacks any medical opinion supporting the RFC.  For the reasons that follow, this Court concludes that these arguments are unavailing.

20.   For a pre-March 27, 2017, application as presented here, the applicable Social Security regulations listed eight categories of providers that were deemed acceptable medical sources, 20 C.F.R. § 416.902(a), whose opinions would be entitled

to controlling weight, id. § 416.927(c)(2).  This list, however, did not include a counselor such as MHC Staskiewicz as an accepted medical source.  See id. § 416.902(j)(3).

21.     Nevertheless, these regulations also provided that the ALJ may consider opinions from such non-acceptable medical sources even though these opinions are not entitled to controlling weight.  Id. §§ 416.913(a)(4), 416.927(f)(1).  The ALJ considered these opinions under the same factors for consideration of an acceptable medical source, that is, the consistency of the opinion with the record as a whole; the length, nature, and extend of the treatment relationship; relevant evidence which supports the opinion; and acknowledging any specialization of the source.  Id. § 416.927(c)(1)-(6), (f)(1); see, e.g., Jonathan S. v. Comm'r, No. 1:20-CV-1177 (WBC), 2022 WL 44700, at *3-4 (W.D.N.Y. Jan. 5, 2022).  The regulations specifically provided that not every factor listed above will apply in every case based upon the particular facts in each case, and that the ALJ must explain the weight given to an opinion to "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  20 C.F.R. § 416.927(f)(1), (f)(2); see also Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (courts do not require such "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear").

22.     This standard differs from that for applications filed after March 27, 2017, which makes the supportability and consistency of an opinion the most important factors in determining its persuasiveness.  20 C.F.R. § 416.920c(b).

23.     Plaintiff first argues that the ALJ erred in applying the post-March 27, 2017, standards to his pre-March 27, 2017, application.  He contends that the ALJ compounds

this error by only considering the supportability and consistency of that opinion and not the other factors required for its evaluation under pre-March 27, 2017, standards.

24. While it is unclear whether the ALJ applied the new or old regulations (R. at 895, 898), this Court finds any error in this regard is harmless. See Petrie v. Astrue, 412 F. App'x 401, 409-10 (2d Cir. 2011) (mere typographical error and citation to semi-skilled occupation was not a basis for remand). The standards for the supportability and consistency of MHC Staskiewicz' opinion are the same under the pre- and post-March 27, 2017, regulations. Under both the new and old regulations, however, the ALJ considers the consistency and supportability of a medical opinion as part of its assessment. 20 C.F.R. §§ 416.927(c)(3), (4) (applicable for claims before March 27, 2017), 416.920c(b)(2) (applicable for claims after March 27, 2017); see also Theresa M. C. v. Comm'r, No. 1:21-cv-01005 (JJM), 2024 WL 1174369, at *6 (W.D.N.Y. Mar. 19, 2024). More specifically, it is harmless error because application of § 416.920c rather than § 416.927 would not contradict the ALJ's ultimate decision. See Pritchard v. Colvin, No. 13-945, 2014 WL 3534987, at *9 (N.D.N.Y. July 17, 2014). Therefore, Plaintiff's objection on this ground in his Motion for Judgment on the Pleadings is denied.

25. This Court finds that the ALJ did consider the other relevant factors from the applicable pre-March 27, 2017, regulations, as well as the opinion's supportability and consistency; therefore, a remand to consider these factors is not warranted. See 20 C.F.R. § 416.927(c), (f)(1). (R. at 899-900.)

26. The ALJ discussed Plaintiff's examining and treatment relationship with MHC Staskiewicz, noting that Best Self treated Plaintiff since August 1, 2018, and MHC

Staskiewicz saw him for counseling biweekly and monthly medication management appointments. (R. at 808, 899.)

27. As for consistency, Plaintiff now complains that the ALJ cherry picked from the record to reach her conclusion. This Court disagrees.

28. Cherry picking is improperly crediting evidence that supports a finding while ignoring evidence favorable to the disability claimant. Starzynski v. Colvin, No. 1:15-cv-00940 (MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016); Javon W. v. Comm'r, 629 F. Supp. 3d 62, 67 (W.D.N.Y. 2022). "'Cherry picked' decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion." Strange v. Comm'r, No. 6:13-cv-527 (GLS/ESH), 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 6, 2014). Cherry picking also "can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." Younes v. Colvin, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

29. This Court finds no indication of cherry picking by the ALJ here. While finding normal or benign results in Plaintiff's examination, the ALJ discussed one of Plaintiff's examinations where Plaintiff was diagnosed with unspecified depressive disorder and PTSD from his depression, anxiety, hypervigilance, and being on edge. (R. at 897, 1048.)

30. What is more, Plaintiff cites his September 6, 2018, hospital visit at the Erie County Medical Center for a positive depression screening. (Docket No. 4, Pl. Memo. at 20, citing R. at 238.) But this cites merely the signature page of that visit for physical pain

symptoms; the report itself noted that Plaintiff had depression although he was not seeking mental health treatment. (R. at 294, 296, 898.) This examination found that Plaintiff was normal in his orientation to person, place, and time, as well as his mood and affect. (R. at 296.)

31. While reasonable minds may disagree upon this record about the severity of Plaintiff's impairment, the ALJ considered all the evidence here. Plaintiff has not shown that the ALJ misread this record or selectively assessed it. The ALJ's interpretation of the record and her consistency conclusions therefrom are supported by substantial evidence. See Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013). Thus, the consistency finding is not the product of cherry picking of the records.

32. As for specialization, the ALJ noted MHC Staskiewicz was a counselor but that fact is not necessarily relevant. Under the pre-March 27, 2017, regulations, a counselor is not an accepted medical source requiring controlling weight for their opinion. 20 C.F.R. § 416.902(j)(3).

33. Thus, under the applicable factors the ALJ appropriately weighed MHS Staskiewicz' opinion.

34. Plaintiff next argues that without MHC Staskiewicz' opinion, the ALJ lacked any supporting medical opinion for the RFC. Instead, he asserts that the record only contains state agency statements of insufficient evidence and raw medical evidence as interpreted by the lay ALJ. This Court disagrees and finds that the ALJ had substantial medical evidence in this record and did not rely upon his lay interpretation of that record to reach Plaintiff's RFC.

35. An ALJ is not a medical professional and as such "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). Generally, "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (Skretny, J.) (citation and quotation omitted). "Where, however, the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r, 676 F. App'x 5, 8 (2d Cir. 2017) (quotations, alterations, and citations omitted); see Spivey v. Comm'r, 338 F. Supp. 3d 122, 127 (W.D.N.Y. 2018) (when the record is clear and contains a useful assessment from a medical source, a formal medical opinion is unnecessary).

36. Furthermore, the ALJ has the discretion to resolve conflicts within the evidence. Veino v. Barnhart, 317 F.3d 578, 588 (2d Cir. 2002). This Court defers to the ALJ's reasonable interpretation of this evidence. McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).

37. Earlier in this case, Chief Judge Wolford faulted the ALJ's reliance upon his lay assessment of the medical records. Otis W., 2022 WL 2114797, at *3-4. (R. at 959-61.) Plaintiff now contends that the ALJ repeated this error.

38. This Court now finds that the ALJ appropriately gave little weight to the other medical opinions in the record and properly concluded that the RFC is supported by the record. (R. at 898-99, 900.) Indeed, the ALJ reviewed Plaintiff's examinations following his gunshot wound noting findings that he had no apparent or acute distress, but had

normal gait, range of motion (save his wounded left shoulder), and motor strength. (R. at 895-97; see R. at 214, 240, 288, 1081, 1143, 1154.) As for Plaintiff's mental health as just discussed, the ALJ also noted examination reports that observed Plaintiff was alert and oriented in three spheres, had appropriate judgment and insight, and did not possess a memory impairment. (R. at 896-97; see R. at 214, 240, 288, 1081, 1143.)

39.    Psychological consultant H. Tzetzo, M.D., on July 12, 2017, opined that there was insufficient evidence for the claimed mental disorders. (R. at 65.) The ALJ, however, gave this opinion little weight by citing Plaintiff's November 19, 2015, examination, when Dr. Tzetzo diagnosed him with PTSD, and his May 2, 2019, record noting his diagnoses for PTSD and depressive disorder. (R. at 898; see R. at 436, 441, 1048.)

40.    Furthermore, this Court finds that the ALJ did not interpret raw medical data as a layperson. Rather, even without MHC Staskiewicz' opinion and despite the state agency reports of insufficient evidence, the present record is clear and contains ample evidence and assessment from treating personnel to not require a formal medical opinion.

41.    Furthermore, the ALJ relied on Plaintiff's daily activities, such as participating in a ping pong club, weightlifting, and playing basketball and football, concluding that these activities belie any physical disability. (R. at 897-98; see R. at 454, 859.) . See Monroe, 676 F. App'x at 9. The ALJ thus did not need a formal medical opinion to evaluate these daily activities.

42.    The ALJ did not give her lay interpretation of Plaintiff's raw medical data. Rather, she had substantial evidence for determining Plaintiff's RFC without having a

formal medical opinion. Therefore, Plaintiff's Motion for Judgment on this ground is denied.

43. Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds no error in the ALJ's determination. The ALJ appropriately weighed the opinion of MHC Staskiewicz, albeit citing the wrong version of the regulation. The ALJ did not cherry pick from Plaintiff's psychological record in finding the consistency of MHC Staskiewicz' opinion with the medical record. That medical record also provided substantial evidence for the weight the ALJ gave this opinion and in determining the RFC. Thus, Plaintiff's Motion for Judgment on the Pleadings is denied while Defendant's motion is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No.4) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: August 22, 2024
       Buffalo, New York

                                            s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                          United States District Judge